## Standard Auto Insurance Association, et al. v. Wade, et al.

(Decided December 2, 1924.)

### Appeal from Christian Circuit Court.

1. Trial—Burden of Proof, where Answer Denied Facts Essential to Recovery, Properly Awarded to Plaintiffs.—Where answer denied facts essential to recovery so as to require directed verdict if no evidence was introduced, burden of proof was properly awarded to plaintiffs in suit on fire insurance policy.

2. Insurance—Testimony Held to Sustain Verdict for Plaintiffs in Action on Automobile Policy as Against Pleas of Release and Willful Burning.—In action on automobile fire policy, testimony held to sustain verdict for plaintiffs as against pleas of release and willful burning, prohibited in policy.

BREATHITT & BREATHITT for appellants.

W. H. SOUTHALL and J. B. ALLENSWORTH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In July, 1920, S. T. Wade and his sons, Edgar Wade, Ernest Wade, and Walter Wade, partners doing business under the firm name of S. T. Wade & Sons, purchased a Grant six touring car from David Smith, on which they owed a balance of $1,200.00. On April 4, 1921, the Standard Auto Insurance Association issued to S. T. Wade & Sons a policy insuring the automobile in the sum of $1,200.00 against loss or damage by "fire arising from any cause whatsoever not willful on the part of the assured." On the night of May 31, 1921, the automobile was burned and completely destroyed. The insurance company having declined to pay the loss, this suit was brought to recover on the policy. The first paragraph of the answer contains an absolute denial of certain allegations of the petition and a qualified denial of other allegations. The second paragraph contains a plea that the loss or damage was caused by the willful act of the assured. The third paragraph pleaded a settlement by which plaintiffs, in consideration of $1.00 and other valuable consideration, released and discharged the company from all liability. A trial before a jury resulted in a verdict and judgment in favor of plaintiffs, and the insurance company has appealed.

S. T. Wade testified that he drove the car to Hopkinsville about five o'clock in the afternoon and went to McDonald's garage. He then drove the car to Ninth street in front of the Cherokee building. A little after nine o'clock he got in the car and started home. He had trouble in starting the car and went to the Dixie cafe, where his son worked, to see if he could start it. His son then went up the street and found a man by the name of Hamilton who said the ignition was bad, and after doing something to the car, cranked it and the car started. He and his son then got into the car and started home. On the road the lights would come and go. On reaching the gate at the farm they ran into the field about fifty yards. They were afraid the gasoline would blow up, and got out of the way. The car burned up. Neither he nor his son did anything to set the car afire. There was no break or hole in the gasoline pipes that he knew of. He did give a little string a pull. He figured that the car was worth about $1,500.00, and Mr. Smith had offered $1,200.00 for it. There was no way for them to extinguish the flames after the fire got started. On June 9th he was in Hopkinsville and met Mr. Crews, the agent for the company, and Mr. Black, who said he was the fire marshal. They told him to go with them to the hotel, that they wanted to talk the matter over. They commenced to talk and said that Dave Smith and Frank Wilson had signed affidavits that he had burned the car to get the insurance, and were trying to put him in the penitentiary. He replied that if Dave Smith or anyone else said that, it was a damn lie. When they got into the room at the hotel Black began to do some writing and was talking all the time. He said, "I will write this up and you sign the affidavit. We are your friends and these other fellows are trying to get you into trouble." They also said that they would save him trouble if he signed the affidavit. Before signing it he told them that he didn't think he would sign the affidavit, and that he had better be going. Mr. Black said, "I am the fire marshal, and have a right to arrest you and hold you." Mr. Crews said, "I was chief of police at Vincennes. I have been through hell. I was an officer in the war for three years. You had better sign these papers." They came at him in a pretty rough manner. Naturally it flustrated him considerably. They didn't explain why they wanted to arrest him. After he signed the affidavit they did have him arrested.

J. R. Wade testified that he accompanied his father home in the car. They had trouble in starting it and Mr. Hamilton assisted them in starting it. He did not know what trouble Hamilton found with it. As they drove home the engine was missing and the lights began to go on and off. They noticed the smoke coming up through the boards. He got out and raised the hood and gave it air. When he raised the hood it blazed up in a big flame, and the machine burned up. Neither he nor his father did anything to set the car afire. He never tore any tape off the gasoline pipes or anything else.

J. H. Crews, special investigator for the company, testified in substance as follows: When he learned of the loss he came to Hopkinsville on June 8th, and there met Mr. Black, who had come at the request of the insurance company. The next morning they went to Mr. Wade's home and saw two of the boys. They told him that their father was in the car by himself when it burned. They also told him that their father was then in Hopkinsville. After taking a statement from the boys, they returned to Hopkinsville. After reaching Hopkinsville they found Mr. Wade and told him that they would like to have a statement. They never used any threats or force of any kind, nor did they tell him that they had affidavits of Dave Smith and Frank Wilson, and that they were trying to put him in the penitentiary. In the room of the hotel Mr. Black asked Mr. Wade about the fire and he told him he would like to have his statement. Mr. Wade made a statement and Mr. Black informed him that his statement didn't coincide with that of his boys. Thereupon Mr. Wade says, "I see you know as much about it at I do, and I might as well tell you the truth." Mr. Wade then made a statement about the fire. Mr. Black started to take it down. Mr. Wade said, "I can not read nor write." Black said, "If that is the case I will get somebody in here to take it down for you." He then went out and got Mr. Fruit. Mr. Fruit came in, took down the statement, and Mr. Wade signed it. While there they paid Mr. Wade $1.00 and took the release.

The evidence of E. H. Black, state inspector, department of fire prevention and rates, is as follows: He was ordered by the fire marshal's department to report at Hopkinsville, on June 8th. The next morning he met Mr. Crews and they went to the home of S. T. Wade. The Wade boys said that Dave Smith had been there that morning and left word for their father to come to town

by five o'clock. After taking the boys' statement they returned to Hopkinsville and found S. T. Wade. He never told Wade that he had affidavits from Dave Smith or Frank Wilson or anyone else; never mentioned Dave Smith's name; never threatened Wade with any prosecution at all, nor used any kind of force, or language that would scare or threaten. After reaching the room he filled out a questionnaire. After taking the first statement from Wade he told him that his statement did not agree with that of his boys; that he knew that his first statement was false, and he ought to make a clean, manly statement. Wade broke down and began to cry, and said, "I can not go back on these boys—I see you all know all about it any way—I will tell the truth. I won't say I struck a match to it, but I pulled some tape off of that pipe so it would burn." After Wade told him that he didn't know how to read or write, but could just sign his name, he went out to get a notary public, or someone else, qualified to take his statement. He found Mr. Fruit in front of the bank. Fruit took down the statement, and as he would take it down, would read it to Wade. He also read the whole thing to Wade before he signed it.

Sam Fruit, who was then county attorney, testified that he went to the hotel room at the request of Mr. Black. As Mr. Wade made his statement he wrote the sentences down and would read them back to him. At the conclusion, he read the whole statement and Mr. Wade voluntarily signed it. He thought that Mr. Wade understood the statement. While he was there no force nor threats, nor coercion of any kind were used by either Black or Crews to get Wade to sign the papers. However, he did not know what had occurred before he came into the room.

The statement which S. T. Wade signed is as follows:

"State of Kentucky
Christian county.

### AFFIDAVIT

"The affiant, S. T. Wade, states that on the night of May 31, 1921, his Grant automobile burned; that in the afternoon of that day, David Smith came to his house and left word with his (affiant's) sons for affiant to come to town that night. Affiant came to Hopkinsville that night and went to Mr. Smith's

residence on South Clay street, and had a conversation with Mr. Smith. Mr. Smith said he had found out the company had cancelled the policy on affiant's car, or that they were preparing to cancel it. He (Smith) said you had better make some disconnection and let it go. He said you (affiant) can buy a Ford for half the money. Mr. Smith said it seems that somebody is meddling with this insurance business.

"Affiant further states that he bought this car from the Smith Motor Company, but had not paid anything on it. Said David Smith had a mortgage on the car for the price of it, which was $1,695.00; that said car was insured for $1,200.00, but he has never received the policy; that David Smith paid the premium on the policy.

"Affiant states that he pulled the tape off of a bursted gas pipe and let the gas escape, which set the car afire; that the car ran about a mile after he took the tape off before it burned.

"(Signed) S. T. WADE.

"Subscribed and sworn to before me by S. T. Wade, this June 9, 1921.

"(Signed) E. H. BLACK,
State Inspector Dept. of Fire Prevention and Rates."

A reversal is asked on the ground that the court erred in awarding the assured the burden of proof, and on the further ground that the verdict is flagrantly against the evidence.

There are instances where a mere qualified denial will place the burden of proof on the defendant, but we have carefully examined the answer and find that it specifically denies certain facts essential to a recovery. With the pleadings in that state, it would have been the duty of the trial court to give a peremptory in favor of the defendant if no evidence had been introduced, and, that being true, there can be no doubt that the burden of proof was on plaintiffs.

It was testified without objection that the company wrote their agents at Hopkinsville to take up and cancel the policy, and that the notice was received by the agents on the morning before the fire. The theory of the company is that David Smith, who had a lien on the car, and

had paid the insurance premium, learned in some way of the threatened cancellation; that Smith went to Wade's farm and requested him to come to Hopkinsville that afternoon; that the scheme to burn the car was concocted then; and that S. T. Wade's statement, which the overwhelming evidence shows to have been voluntarily made, was sufficient to overcome all the evidence to the contrary. The difficulty with this theory is that there was no evidence to show that Smith was apprised of the threatened cancellation, and even if he was, it is hard to fathom the motive that induced the Wades to burn the car on which they paid a part of the purchase price, in order that they might get the insurance. It may be conceded that the evidence that S. T. Wade's statement was voluntarily made is very persuasive, and that probably we would have reached a different conclusion if we had sat in place of the jury; but after all he testified to facts tending to show that the statement was obtained by duress, and with that evidence before the jury, supplemented by the evidence of his son, who was with his father from the time that Hamilton fixed and started the machine up until the time the fire occurred, that neither he nor his father did anything to cause the fire, we can not say the verdict was flagrantly against the evidence.

Judgment affirmed.